# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

RAYMUNDO ALLENDE, SILVINA ZAPATA
and ALEJANDRO PORRA,[1] on their own behalf
and on behalf of all others similarly situated,

                                                            29 U.S.C. § 216(b) Collective Action

      Plaintiffs,

vs.                                                            No. CIV 08-285 WJ/RHS

IDEAL CLEANING SERVICE, INC., a
Texas Corporation,

      Defendant.

## MEMORANDUM OPINION AND ORDER DENYING SUMMARY JUDGMENT

THIS MATTER comes before the Court upon Defendant's Motion for Summary Judgment, filed December 8, 2008 (Doc. 36). Having considered the parties' briefs and the applicable law, I find that Defendant's motion is not well-taken and will be denied.

### Background

This is a collective action lawsuit brought to recover unpaid overtime wages under the Fair Labor Standards Act (29 U.S.C. § 201 *et seq*.). In this case, the summary judgment question rides on whether there are factual disputes concerning whether Plaintiffs are employees of Defendant Ideal Cleaning Service, Inc. ("Defendant" or "Ideal Cleaning"), or whether they are independent contractors.

---

[1] Mr. Porras filed a consent to join this lawsuit on September 12, 2008 (Doc. 20). Subsequent pleadings by the parties should be reflect that Mr. Porras is a named Plaintiff in this action. There is a pending motion by Plaintiffs for class certification of the collective action. Doc. 36.

**I.      Plaintiffs' Position**

Plaintiffs contend that Raymundo Allende, Silvina Zapata and Alejandro Porra were employed by Defendant in the last three years to clean floors and bathrooms at New Mexico retail establishments, including Albertson's supermarkets. The named Plaintiffs worked seven days per week from midnight to 7:30 a.m., working, on average, more than 50 hours per week. They allege that they were not paid overtime for the hours they worked beyond forty each week. Plaintiffs contend that they, and other similarly-situated employees, were non-exempt employees and were entitled to receive one and one-half times their hourly rate for work beyond forty hours per week under state and federal law.  Plaintiffs assert that Defendant intentionally and repeatedly failed to pay Plaintiffs and other employees for all of the time they worked and also failed to pay Plaintiffs and other employees time and one half for hours worked in excess of forty in a workweek.

**II.     Defendant's Position**

Defendant denies Plaintiffs' contentions and denies that this case should be a collective action.  Defendant contends that Plaintiffs (and the individuals named as potential plaintiffs) were legitimate independent contractors – not employees. Moreover, Defendant contends that the payments made to Plaintiffs, divided by the number of hours worked is greater than the minimum wage applicable at the relevant time.  Also, Defendant denies that Plaintiffs worked more than forty hours in a workweek.

**III.    Undisputed Facts**

Defendant contracts with retail stores to provide floor and bathroom maintenance. Plaintiffs maintained the floors and bathrooms of the retail stores with which Defendant had contracted.

*Compensation*

Defendant did not require Plaintiffs to keep track of their hours. Instead, Plaintiffs sent Defendant invoices indicating the days that they had worked. Defendant paid Plaintiffs twice a month on a per day basis. For example, Mr. Porras testified that every two weeks he sent an invoice to Ideal Cleaning showing the number of days worked. The Albertson's store manager noted on the invoice that the work was done. The invoice was faxed to Ideal in exchange for a check covering the prior two weeks. If a Plaintiff missed a day of work, he did not get paid for that day. Defendant did not withhold workers' compensation, social security, or taxes from Plaintiffs' paychecks. Plaintiffs' paychecks contained the notation "contract labor."

For example, Mr. Allende sent Ideal Cleaning an invoice every two weeks for his work. He was paid the same amount or each two week period. The amount of pay did not change with the number of hours he worked. Ex. B at 33-34:13-25 and 1-3. Mr. Allende executed an IRS form W-9 Request for Taxpayer Identification Number and Certification. Ex. B at 35:20-25 and Ex. J. Allende also executed a Texas worker's Compensation Commission Agreement between General Contractor and Subcontractor. Ex. B at 37:13-19 and Ex. K. At least one of the workers worked at both a store in Albuquerque and a store in Rio Rancho. Ex. B at 9:15; at 10:3.

*Training and Supervision*

Defendant did not provide any training for Plaintiffs. Defendant did not give Plaintiffs a handbook or policy manual. Plaintiffs knew how to perform floor maintenance including sweeping, mopping, and operating a scrubber and buffer before they started working for Defendant. For example, Mr. Porras learned to begin cleaning when the store closed while working for a different company called Sunflower Markets. Mr. Porras received no training from Ideal Cleaning, and that he learned how to clean stores from friends and cousins before

3

beginning to do work for Ideal Cleaning.

The retail store managers monitored Plaintiffs' attendance but did not supervise them while they were working. The Albertson's night manager would review the cleaning crew's work and determine if it was good or bad, each day. The manager of Albertson's sometimes talked to Mr. Porras about problems with cleaning. Ex. I at 17:1-3. Mr. Allende testified that if the floors were not cleaned or waxed properly, the manager of the Albertson's would notify Ideal Cleaning. Ex. 1 (Allende Dep.) at 10-11, ln. 25 and ln. 1. 40. The manager of the Albertson's complained to Mr. Allende "a lot" that the floors looked bad. John Tyrell, the manager of the Rio Rancho Albertson's Store, testified that he would look at the floors each morning to determine if they had been cleaned properly. Ex. H (Tyrell Dep). at 4-5. If Mr. Tyrell found a problem with the floors, he would contact the contact person for Ideal Cleaning.

*Supplies, Equipment*

The retail stores which contracted with Defendant provided cleaning equipment and supplies, other than buffers, that are used by Defendant's contractors. Albertsons owned the mops, mop buckets, brooms, paper product, and soap used by the workers to clean the floors and bathrooms. Mr. Tyrell testified that Albertson's owned and provided to the workers[2] cleaning equipment and materials including chemicals, stripping fluid, soap, wax, bathroom cleaning chemicals, and the mechanical scrubber. Mr. Porras testified that Albertson's owned the mechanical stripper used to clean floors and that Albertson's made necessary repairs to the stripping machine. Parties dispute the percentage of workers who were supplied with buffing

---

[2] The Court's use of the word "workers" or employees throughout these findings does not endorse either party's position regarding whether Plaintiffs are independent contractors or employees. The Court uses the word "employees" where the workers are referenced as such by a party.

machines, versus the number of workers who owned them. Defendant claims that only 50 to 85% of the workers were provided this equipment, whereas Plaintiffs claim that only 10% of the buffing machines were owned by the workers. Ex. 1 (Allende Dep.) at 36:8-10.[3] Mr. Porras testified that Albertson's owned the mops workers used at the stores. Mr. Porras testified that Albertson's owned and provided the paper towels, soap, chemicals and wax used to clean the stores. Ex. 3 (Porras Dep) at 15, ln. 2-7.

## IV.  Disputed Facts

Plaintiffs' response to Defendant's statement of undisputed material facts ("SUMF") uncovers what the Court considers to be factual disputes.

*Documentation Received or Completed by Plaintiffs*

Plaintiffs dispute Defendant's SUMF number 3 and 5 regarding documents presented and/or completed by Plaintiffs. SUMF number 3 states that Plaintiffs completed workers' compensation forms[4] that indicated their status as independent contractors, and SUMF states that "all workers were provided with an Independent Contractor Agreement. . . ." Defendant's statements are based on the affidavit of Teresa Gomez, the President of Ideal Cleaning (Ex. 3). Plaintiffs dispute whether such independent contractor agreements were ever received by the workers. Mr. Allende testified that he never saw or received an Independent Contractor

---

[3] Plaintiffs list exhibit by number and Defendant by alphabet, which makes reference to these exhibits more efficient. Defendant's exhibits will be referenced by pleading as well, since the attachments to both the motion and reply start with Exhibit "A."

[4] The only reference to workers' compensation is this reference to forms. The Court is left wondering what happens if a worker is injured while cleaning the floor at an Albertson's. Does the worker file a workers' compensation claim? If there is workers' compensation covering the workers, who paid the workers' compensation insurance premium? The other side of the question is, how were the workers viewed by Albertson's? Did Albertson's understand the workers to be covered by workers' compensation in the event an injury happened on the job?

Agreement. Ex. 1 (Allende Dep. at 34-35).

As for the workers' compensation forms, Plaintiffs do not expressly present a dispute of fact regarding whether Plaintiffs completed these forms, but argue the legal significance – or lack of – to determine whether Plaintiffs were employees or independent contractors. For now, the Court recognizes that there may be some dispute over whether Plaintiffs received Independent Contractor Agreements, and will address this further below.

*Equipment and Supplies*

Plaintiffs also dispute the percentage of workers who owned buffing machines. The Court does not consider this to be a genuine issue of material fact. A "genuine" issue of fact requires more than simply showing "that there is some metaphysical doubt as to the material facts." *Bartell v. Aurora Public Schools* 263 F.3d 1143, 1147 (10th Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Based on the facts presented on the record thus far, it appears undisputed that Albertson's supplied most of the cleaning equipment and materials. *See*, Ex. 5 (Gomez Dep. at 28).

*Supervision and Control*

Plaintiffs dispute the degree of control which Ideal Cleaning exerted over the workers. Defendant claims that it did not supervise Plaintiffs (SUMF number18); that Defendant did not require Plaintiffs to begin work at a particular time but they were expected to finish cleaning before the stores opened in the morning (SUMF number 20); and that the work performed by Plaintiffs was not checked on a frequent or regular basis (SUMF numbers 30 and 43). As

support for its statement that Ideal Cleaning did not supervise Plaintiffs, Defendant offers the deposition of Fausto Gomez, the vice president of Ideal Cleaning:

> Q:   Do many of your workers work past 6:00 a.m.?
> A.   I think so, but I'm not sure because I'm not there to watch them.

Ex. A to Mot. at 24:4-6.

Defendant also cites to the deposition testimony which relates to visits by out-of-state managers from Ideal Cleaning who would check of Plaintiff's work once every two to three months. *See*, *e.g.,* Ex. I to Mot., at 15:21-25; Ex. B at 31:8-12. Plaintiff points out that Defendant ignores the testimony given by both Mr. Allende and Mr. Porras regarding supervision of their work by Martin Diaz, an Ideal Cleaning Services manager. Mr. Porras testified that the supervisor stationed in New Mexico (Martin Diaz) checked his work every two weeks. Ex. 3 (Porras Dep.) at 16:11-16. He stated that Mr. Diaz would correct him when he failed to clean "a little bit of dirt on the corners, on the edges, trash which was not swept well, a spot in one of the hallways." *Id*., at 16:17-22. Plaintiff Allende testified that Ideal Cleaning Supervisor Martin Diaz was his supervisor:

> Q:   Did you consider Martin Diaz your supervisor?
> A:   Yeah, he was – yes, because he was the supervisor over here for all the employees.
> Q:   All the employees in New Mexico?
> A:   Yes.

Ex. 1, Allende Dep. at 12:5-11. In addition, Ideal Cleaning Services, Inc. executive Jesus Gomez testified that the company monitored their employees' work via a checklist filled out daily to verify that the employees complete all duties assigned. Ex. 4, J. Gomez Dep. at 19:2-15).

Plaintiffs dispute SUMF number 20 in which Defendant states that Ideal Cleaning did not require Plaintiffs to begin work at a particular time, although it required that the workers finish

7

by a set hour. Plaintiffs characterize this statement as inconsistent with Defendant's own position taken later in its motion when Defendant asserts that Plaintiffs "could complete their work any time between 11:30 p.m. and 6 a.m." (Ex. A at 22-23:23-25, 1- 4 and 15-22, cited in Mot at 9). Plaintiffs contend that in reality, the company directed its employees as to the times when they were required to begin and end their work for the company, and present evidence to support this contention. *See* Ex. 3 (Porras Dep.) at 23:16-17 (testifying that he was instructed by Martin Diaz, his Ideal Cleaning Services supervisor, as to the time that he was required to begin work).

        Plaintiffs dispute Defendant's SUMF 21, which states that the company allowed Plaintiffs bring other individuals to help them with their cleaning duties. Teresa Gomez testified that although clients prefer to know who will be cleaning in their stores, the company did not concern itself with whether a worker wanted to take anyone else along with them to perform their duties. Ex. D at 21:8-14. Plaintiff takes issue with Defendant's factual statement by contending that there is no evidence that any Ideal Cleaning worker ever discussed or inquired about taking people along to help with the work. I do not consider Plaintiff's response to create a factual dispute because the testimony offered by Plaintiff does not rebut Defendant's fact that workers were indeed allowed to bring someone along to help with the work. In other words, Plaintiff does not offer evidence to show that any Ideal Cleaning worker was *not* allowed to do so.

**IV.**    **Legal Standard**

        Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). We consider the facts and all reasonable inferences drawn therefrom in a light most favorable to the nonmoving parties. Hollander v. Sandoz Pharmaceuticals Corp., 289 F.3d 1193, 1214 (10th Cir.2002). In this respect, we must view the evidence in context, not simply in its segmented parts." McCowan v. All Star Maint., Inc., 273 F.3d 917, 921 (10th Cir.2001).

### Discussion

Under the Fair Labor Standards Act of 1938 ("FLSA" or "Act"), 29 U.S.C. § 201 *et seq.*, an employer may not employ a person for more than 40 hours per workweek unless the employee receives overtime compensation of at least one- and-a-half times the regular hourly rate for hours exceeding 40. *I*d. at § 207(a)(2)(c). Under the Act, any employer "who violates the provisions . . . of this title shall be liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . . 29 U.S.C. § 216(b). The FLSA creates an exemption to its overtime requirement, however, for people "employed in a bona fide executive, administrative, or professional capacity." *I*d. at § 213(a)(1). A Department of Labor (DOL) regulation states that an employee comes within the "professional" exemption when the employee's job functions satisfy a duties test and the employee is paid on a salary basis. *See* 29 C.F.R. § 541.3 (2003).

In an FLSA case, the employer bears the burden of proving applicability of an FLSA exemption; we must construe the exemption narrowly against the employer. Chessin v. Keystone Resort Management, Inc, 184 F.3d 1188, 1192 (10th Cir. 1999) (citing Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 394 n. 11 (1960). Thus, in a summary judgment context, Defendant must show there is no disputed issue of fact that Plaintiffs are not entitled to the FLSA exemption. In order to preclude summary judgment, Plaintiffs must present an issue of fact to

show that Defendant has not met its burden under the FLSA. See, e.g. Johnson v. Unified Government of Kansas City, KS, 371 F.3d 723, 727 (10th Cir. 2004) (to establish their entitlement to overtime compensation, plaintiffs had to prove that they were employees of the Housing Authority, as opposed to independent contractors).

The FLSA defines an employee as "any individual employed by an employer," 29 U.S.C. § 203(e)(1). An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d). "Employ" means, "suffer or permit to work." 29 U.S.C. § 203(g). An entity "suffers or permits" an individual to work if, as a matter of "economic reality," the entity functions as the individual's employer. Goldberg v. Whitaker House Coop., Inc., 366 U.S. 28, 33 (1961); Bartels v. Birmingham, 332 U.S. 126, 130 (1947).

The Court's analysis of whether the Plaintiffs were employees, rather than independent contractors, hinges on concepts that are broader than "traditional common law concepts. . . Johnson, 371 F.3d at 729.[5] Instead, the analysis "focuses on the economic realities, 'and the focal point is 'whether the individual is economically dependent on the business to which he renders service. . . or is, as a matter of economic fact, in business for himself.' " Id. (citing Dole v. Snell, 875 F.2d 802, 804 (10th Cir.1989) (quoting Doty v. Elias, 733 F.2d 720, 722-23 (10th Cir.1984)); see Henderson v. Inter-Chem Coal Co., Inc., 41 F.3d 567, 570 (10th Cir. 1994 (citing Bartels v. Birmingham, 332 U.S. 126, 130 (1947) (whether individual is to be considered an employee or an independent contractor for the purposes of the FLSA depends on whether "the

---

[5] *See also Nationwide Mut. Ins. Co. v. Darden,* 112 S.Ct. 1344, 1350 (1992) (The FLSA's definition of employee is "strikingly broad" and "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles."); *see also United States v. Rosenwasser,* 323 U.S. 360, 362 (1945) ("[a] broader or more comprehensive coverage of employees within the stated categories would be difficult to frame.").

individual is economically dependent on the business to which he renders service . . . or is, as a matter of economic fact, in business for himself").

In order to ascertain whether a worker is dependent on the business to which he renders service, the Court relies on a set of factors as part of an "economic reality test," although other evidence may be considered: (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; and (5) the degree of skill required to perform the work. An additional commonly considered factor is (6) the extent to which the work is an integral part of the alleged employer's business. Johnson, 371 F.3d at 729 (citing Dole, 875 F.2d at 805).[6]

### I. Degree of Control

Defendant submits that there little degree of control of Plaintiff's work, since they did not have to keep set hours and could complete their work any time between 11:30 p.m. and 6 a.m. However, the fact that the cleaning workers' work schedules were not rigid does not mean that they were independent contractors.  *See Doty*, 733 F.2d at 723 ((although waiters and waitresses were free within limits to set their own hours, they could only wait tables only during restaurant's business hours and thus restaurant essentially establish their work schedules).  It is undisputed that Ideal Cleaning workers were given specific start and stop times, which could be considered by a fact finder to indicate that the workers were employees. Mot. Sum.J. at 9; Ex. 3

---

[6] The latter is not one of the five main factors that courts need to consider, but the Court includes it here, since the test is "based upon the totality of the circumstances, and no one factor in isolation is dispositive of a worker's employment status under the FLSA." Dole v. Snell, 875 F.2d 802, 805 (10th Cir. 1989). Rather, such factors "are simply analytical tools," with their "weight, number and composition" all being variable. Id., n.2.

(Porras Dep. at 23:16-17); *see also Baker v. Flint Engineering & Const. Co*., 137 F.3d 1436, 1443 -1444 (10th Cir. 1998) (affirming district court determination that workers were employees rather than independent contractors where plaintiffs were "specifically told when and where to weld and [had] no authority to override those decisions [and were told] when to report to work, when to take breaks, and when to end their workday").

As part of its contention that the company's workers are independent contractors, Defendant points out that the workers were not given a handbook or policy manual, and that the Defendant even permitted Plaintiffs to bring helpers to work with them. Plaintiff, on the other hand, offers evidence (some of which has been mentioned in the previous factual discussion), that the workers were directed to clean, sweep, mop and buff floors, and were told what stores in which they were to perform those duties. *See* Ex. 1 (Allende Dep. at 39:16–40: 14; Ex. 3, Porras Dep. at 23:16-17 and 40:17-41:1; Ex. 4, J. Gomez Dep. at 12:3-9). Further, there is also evidence that when Ideal's workers failed to perform a given duty to the company's standards, their pay was docked. Ex. 1 (Allende Dep. at 46:15-18).

Defendant argues that the workers were not supervised because of the infrequency of the manager visits, and because the company did not supervise the workers while they were working. This argument fails. First, there are disputes concerning the degree and extent of supervision. Second, daily in-person supervision of work is not required for a finding of employee status. An employer does not need to look over his workers' shoulders every day in order to exercise control. *Brock v. Superior Care*, 840 F.2d 1054 (2nd Cir. 1988) (nursing service that reviewed patient care notes and visited job sites of nurses exercised sufficient control over nurses to favor finding of employment status). Nor is there any legal support for Defendant's contention that because the workers may not have had personal contact with the

12

managers, there was no supervision or control on the part of the company. Reply at 6.

Defendant claims that the cleaning workers did not wear Ideal uniforms or identification, since wearing uniforms or identification would arguably provide some indicia of the workers' employee status. SUMF number 32. The uniforms had the name of the company printed on the backs. However, there is a dispute as to whether company uniforms were either required or worn. *Cmp* Ex. B at 29 (Reply) (uniforms not worn) with Ex. 5 at 27 (uniforms provided to workers for "safety" reasons when client requested it).[7]

Plaintiffs have thus presented evidence and testimony which would suggest to a reasonable fact finder that the workers at Ideal Cleaning were employees under the FLSA, and not independent contractors.

## II.     Opportunity for Profit or Loss and Investment in the Business (second and third factors)

In general, an independent contractor "has the ability to make a profit or sustain a loss due to the ability to bid on projects at a flat rate and to complete projects as it sees fit." *Baker v. Flint Engineering & Const. Co*. 137 F.3d 1436, 1444 (10th Cir. 1998). Defendant claims that the Ideal Cleaning workers fit this profile because the workers' hours varied, but the pay remained essentially the same. The Court fails to see how *Baker* applies to the facts here. It would seem that the "flat rate" which *Baker* mentions refers to an independent contractor's ability to bid at *different* flat rates, depending on the nature of the project to be completed, at which point the contractor must adhere to the bid amount for that project. Here, the fact that the workers' hours

---

[7] Plaintiffs did not specifically dispute Defendant's SUMF number 32, but included evidence that does dispute the statement within the section entitled "Additional Facts Alleged by Plaintiffs."

varied but the pay stayed the same does not necessarily indicate independent contractor status. Instead, it could easily mean that the workers are employees who were unlawfully being withheld overtime pay under the FLSA.

Defendant argues that the amount of investment required to favor a finding of independent contractor status is not very high, relying on a Third Circuit case which addressed the FLSA status of home researchers for a telephone marketing firm. *Donovan v. DialAmerica Marketing, Inc*., 757 F.2d 1376 (3rd Cir. 1985). In that case, the court found that some researchers were employees of telephone marketing firm for purposes of minimum wage provisions of the FLSA, but that those researchers who distributed telephone number research cards to other researchers were independent contractors, in part because these individuals were distributors who were permitted to recruit their own distributees and were responsible for paying all of their expenses, which consisted primarily of transportation expenses.

By way of comparison, Defendant then asserts that Plaintiffs here may have been invested in Ideal Cleaning because there is evidence that some Plaintiffs may have owned their own buffers. However, this fact does not mean that Plaintiff should be considered employees. *See Baker*, 137 F.3d at 1442 (courts have generally held that the fact that a worker supplies his or her own tools or equipment does not preclude a finding of employee status") (citing *Dole*, 875 F.2d at 810). Further, there is also evidence that the workers were provided much of the other cleaning equipment and supplies – including mops, mop buckets, brooms, paper product, chemicals, stripping fluid, soap and mechanical scrubbers.

Plaintiffs also present testimony to the effect that Ideal Cleaning employees had no opportunity to share in the profits or losses of the business. (Ex. 5, Depo. of Fausto Gomez at 35:13-25). Plaintiff Raymundo Allende testified that he did not own any of the equipment used

14

in carrying out his duties for Ideal (Ex. 1, Depo. of Allende at 29:12-15), while Fausto Gomez, the vice president of Ideal Cleaning Services, Inc. testified that his workers do not buy any of the materials used for cleaning floors. (Ex. 5, Depo. of Fausto Gomez at 28:13-14). Teresa Gomez, the President of Ideal Cleaning, testified that only ten percent of the machines used in the business were owned by employees. (Ex. 2, Depo. of Teresa Gomez at 36:8-10).  The workers' pay remained the same even though the company enjoyed an estimated profit of $1 million in 2007. (Ex. 2 at 13:19-16:7); .

Thus, summary judgment on this factor is precluded by evidence presented by Plaintiffs.

**IV.    Permanence of Working Relationship**

Independent contractors generally have a fixed employment period and offer their services to different employers. *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1372 (9th Cir. 1981); *Donovan v. DialAmerica Marketing*, 757 F.2d 1376,1385 (3rd Cir. 1985) (home resesarchers were "employees" of defendant where researchers did not transfer their services from place to place, and worked continuously for defendant).

Defendant argues that Plaintiffs are independent contractors on the basis of testimony indicating that workers transferred between different labor contracting companies, coming to work for Defendant because of higher wages; that some of the workers had already been working in the Albertson's stores before Ideal Cleaning took over that contract; and that Plaintiffs did not work continuously for Defendant for a long period of time.  Mot. at 12. However, some of this testimony cuts both ways.  Defendant relies on testimony of Fausto Gomez to show that workers transferred between different labor contracting companies, but as Plaintiffs point out, Mr. Gomez' statements could easily be read to support Plaintiff's position:

Q.:    Okay.  how long does a worker usually stay with your company, more or less?

>    A.:   Truthfully, they don't leave. They don't go.
>    Q.:   So do they stay more than six months, usually more than a year?
>    A.    Yes, more than six months, yes.
>    . . .
>    Q.:   So is it true to say that the vast majority of your workers come to work with you and intend to stay there for a long period of time?
>    A.:   Yes.

Ex. A to Mot., at 36:25-37:1-5 and 19-22.

The mere fact that workers changed labor contracting companies to work for a higher wage does not mark a worker as an independent contractor. This argument would change the status of most "employees" in this country to "independent contractors" the moment they changed jobs for a better salary.

Defendant also cites to Teresa Gomez' testimony indicating that the longest term of employment for a Plaintiff was two and a half years (Ex. D at 42:15-25), noting that this is still less than what the Third Circuit found to be indicative of employee status. *See DialAmerica*, 757 F.2d at 1385 (performing delivery work continuously for several years weighed in favor of treating distributors as employees, and noting that distributors were still free to do similar work for other organizations). The law does not provide a bright-line regarding length of employment in order to determine status under the FLSA. Turnover may be dependent on the nature of the job (such as here, in a low-wage workforce) rather than indicative of an independent contractor relationship between the parties. *See also Baker*, 137 F.3d at 1442 (finding that plaintiffs who were rig welders were not independent contractors, because plaintiffs' lack of permanence was due to "natural characteristics in the industry, and not the independent choice usually exhibited by one who intentionally chooses to be in business for oneself").

As far as the Ideal Cleaning workers already working for Albertson's when Ideal Cleaning took over the contract, this hardly proves that the workers are independent contractors.

There is no evidence that the workers had any part in the contract negotiations or had any choice in the takeover of the labor contract by Ideal Cleaning.

Thus, Plaintiffs have presented evidence based on which a reasonable fact finder could determine that Plaintiffs' employment with Defendant showed a permanency usually associated with "employees" rather than independent contractors.

## V.     Degree of Skill Required

The degree of skill matters in this analysis because certain independent contractors are often sought out for their expertise. *See Baker*, 137 F.3d at 1442. Defendant argues that Plaintiffs are independent contractors because they were required to know how to clean floors using a scrubber and buffer at the time they were hired. The evidence does show that most workers did have floor cleaning skills at the time they were hired by Ideal Cleaning.

However, the degree of skill required for these jobs was not high, and was learned on another job or through friends from another job. Mr. Porras testified that he learned to begin cleaning when the store closed while working for Sunflower Markets, and that he learned how to clean stores from friends and cousins before beginning to do work for Ideal Cleaning. Fausto Gomez stated that a high level of skill was not required to perform floor and bathroom cleaning duties, and no formal training, certification or education was required of the company's workers. Ex. 5 (F. Gomez Dep) at 36:8-16. Thus, Plaintiffs can not be considered independent contractors simply because Plaintiffs have not presented evidence to rebut Defendant factual contentions under this category.

## VI.    Whether Work is Integral Part of Defendant's Business

In determining whether an individual is to be considered an employee or an independent contractor for the purposes of the FLSA, courts commonly consider the extent to which the work

is an integral part of the alleged employer's business. *See DialAmerica Marketing*, 757 F.2d at 1385 ("... workers are more likely to be "employees" under the FLSA if they perform the primary work of the alleged employer. . . .").

Fausto Gomez, the company's vice president, testified that the janitorial work performed by Plaintiffs was integral to, and made up the "essence" of Defendant's business, and that the company does not provide any services other than the cleaning services carried out by Plaintiffs. Ex. 5 at 37:23-25 and 38:1-5. Thus, Plaintiff has presented sufficient evidence to preclude summary judgment on this factor.

## VII.    Other Relevant Evidence

Defendant makes much of receiving or signing agreements which would indicate that Plaintiffs are independent contractors. Plaintiffs do not specifically dispute that Plaintiffs completed workers' compensation forms which indicate their status as independent contractors. However, there is a dispute as to whether Defendant provided all workers with an Independent Contractor Agreement. *See* Ex. 1 (Allende Dep at 34-35).

The presence or absence of dispute on this issue must give way to the bigger question regarding the legal significance of these documents even if they were all completed and signed. The fact that Plaintiffs may have signed these forms is not necessarily binding because in this analysis it is the economic realities of the relationship which govern, with the focus being "whether the individual is economically dependent on the business to which he renders service. . . . or is, as a matter of economic fact, in business for himself." *Dole v. Snell*, 875 F.2d at 804; *see also Heath v. Perdue Farms, Inc*. 87 F.Supp.2d 452, 457 (D.Md., 2000) ("Courts have also stressed that the label that the parties give to their relationship is not controlling") (citing *Real v. Driscoll Strawberry Assoc., Inc.,* 603 F.2d 748, 755 (9th Cir. 1979).

18

There is an interesting side note to the FLSA-factor analysis. Even assuming documents proclaiming Plaintiffs to be independent contractors were sent by Defendant and received and completed by Plaintiffs, there is a question as whether the workers could know or understand what they were signing. Mr. Porras remembers signing a contract with Ideal Cleaning, but his testimony reveals that he may have been unable to understand the contract because of a language barrier:

> Q.: Do you remember signing a contract with Ideal?
> A.: Yes.
> Q.: Did you read the contract?
> A.: It was in English.
> Q.: Did anybody read it to you?
> A.: No.
> Q.: Did anyone translate it for you?
> A.: No.
> Q.: Did anyone tell you what the contract said?
> A.: No.
> Q.: Who gave you the contract to sign?
> A.: Martin [Diaz] did.
> Q.: What did he tell you about the contract?
> A.: That I had to fill it out so that I could be working right with the company.
> Q.: Did you fill it out and sign it?
> A.: Yes.
> Q.: What did you do with it after you signed it?
> A.: I gave it to Martin.

Ex. I at 37:14-25; Ex. 3 at 38:1-7.

Thus, because the determination of Plaintiffs' employment status under the FLSA does not rest on these documents, Defendant is not entitled to summary judgment based on on this issue.

## Conclusion

In sum, under the Court's analysis to determine whether Plaintiffs are employees or independent contractors under the FLSA, Plaintiffs have present sufficient disputes of fact to

preclude summary judgment.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 36) is hereby DENIED for reasons set forth in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that parties include Mr. Porras as a named Plaintiff in the caption for subsequent pleadings to reflect his consent to join this lawsuit.

_____
UNITED STATES DISTRICT JUDGE